UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HECTOR CHARLES HENRY, | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. H-09-cv-02420 |
| | § | |
| CONTINENTAL AIRLINES, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

**I.  INTRODUCTION**

Pending before the Court is defendant's, Continental Airlines, Inc. ("Continental"), motion for summary judgment (Docket Entry No. 27). The plaintiff, Hector Charles Henry ("Henry"), has filed no response in opposition to Continental's motion for summary judgment and his time to do so has expired. After having carefully evaluated the motion, the record, the undisputed facts and the applicable law, the Court determines that Continental's motion for summary judgment should be GRANTED.

**II.  FACTUAL BACKGROUND**

Henry began working as a customer service agent ("CSA") for Continental in November of 1997, until his employment was suspended due to a work-related back injury on or about April 27, 2006. In or around January of 2008, Henry's treating physician issued a medical release approving his return to work with physical restrictions relative to running, bending, sitting and lifting.[1] (*See* Docket Entry No. 27, Ex. A at 46 – 47.) It is undisputed that Henry is

---

[1] During his deposition, Henry testified that he takes medication for his back injury which makes him drowsy and causes him to experience memory lapses. (*Id.*). He also stated that as a result of his injury, he cannot drive for long distances and does not like driving in congested traffic due to his difficulty concentrating. (*Id.*)

unable to return to his former CSA position at Continental based on his doctor's recommendations and conclusion that his back injury is permanent. (*Id.* at 32).

Upon his return to work at Continental, Henry was advised that he needed to complete a waiver, undergo a background check and submit a resume to apply for a new position. (*See* Docket Entry No. 1; *see also* Docket Entry No. 27, Ex. A at 185 – 86.) Thereafter, he applied for approximately 25 jobs through Continental's on-line application system between April of 2008 and April of 2009. (*Id.* at 185 – 86; *see also* Ex. E, ¶ 3.). The first step in Continental's on-line application process is to submit a resume and answer a series of job-specific screening questions related to the position through Continental's on-line system. (*Id.*, Ex. E, ¶ 2). Certain answers to the screening questions may serve to automatically disqualify an applicant. (*Id.*). Henry submitted his resume and applied for the following positions through Continental's on-line application system: (1) Dispatcher, (2) Staff Accountant, (3) Material Specialist, (4) Manager – Financial Services, (5) Auditor Field Services, (6) Controller I – Chelsea Food Services, (7) Crew Scheduler, (8) Accounting Clerk IV, (9) Payroll Analyst, (10) Cargo Reservation Specialist, (11) CRC Analyst, (12) Administrative Assistant, (13) Hub Administrative Specialist - IAH, (14) Assistant Manager – Chelsea Food Services, (15) Sr. Corporate Auditor, (16) Cargo Administrative Specialist, (17) Auditor Field Services, (18) Sr. Financial Analyst, (19) Accounting Clerk V, (20) Hub Administrative Specialist - IAH, (21) Senior Financial Analyst, (22) Financial Analyst, (23) Staff Manager Coordinator, (24) Administrative Specialist, and (25) Buyer-Chelsea Food Services. (*Id.*, Ex. E, ¶ 3).

On his resume that he posted, Henry described his experience as follows:

- Customer Service Agent (ramp) 11/22/1997 to 07/25/2007
  Continental Airlines, Houston Texas. Work in an, 'outdoor, physically demanding, extremely safety [s]ensitive deadline driven

> environment' loading unloading [a]nd transferring bags/cargo/mail from one place to another.

- Owner/Manager of small business 1993 to 1997. Owner of small retail outlets selling arts and crafts. Managed three, owned retail outlets.[2]

- Tax Auditor 12/1981 to 08/1993. The State of California Franchise Tax Board, Houston, Texas. Conduct field audits/investigations on corporations registered in California. Confer with officers, executives and legal [r]epresentatives of corporations, utilizing computers, work [p]apers and schedules to gather data. Analyze information ensuring that returns filed comply with state laws and regulations.

(*Id.*, Ex. B). He did not list any administrative or computer skills or any experience with any special computer programs on his resume. (*Id.*). Of the twenty-five positions for which he applied: (1) two of the postings were canceled; (2) he was automatically disqualified from thirteen of the positions based on his answers to the initial on-line screening questions; and (3) he was interviewed by telephone for two of the remaining ten positions, based on his on-line application, but was not ultimately selected for these positions in favor of other candidates.

On June 5, 2008, Henry filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"), complaining of Continental's failure and/or refusal to hire him for the Buyer, Dispatcher and Staff Accountant positions in April and May of 2008. He reported that he believed that he was being discriminated against by Continental because of his race and disability in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and the Americans with Disability Act of 1990, as amended, ("ADA"), respectively. (*See* Docket Entry No. 1). On June 10, 2009, the EEOC closed its file on Henry's charge with no finding made as to any of the claims presented and issued a Notice of Right to Sue letter to Henry. On

---

[2] Henry testified during his deposition that he has not participated in the daily management and operation of "Henry's Place" since 1997. He stated that he cannot perform any duties related to the operation of his family's business "[b]ecause of [his] back injury [and] because of [his] mental state." (Docket Entry No. 27, Ex. A at 53 – 54.)

July 30, 2009, Henry filed the instant action against Continental alleging race and disability discrimination in its failure and/or refusal to re-hire him in violation of Title VII and the ADA.

On June 10, 2010, the parties filed a joint motion requesting a settlement conference before a magistrate judge. On June 11, 2010, this Court entered an Order referring the case to mediation. On July 15, 2010, the parties attempted to mediate their dispute before U.S. Magistrate Judge Nancy Johnson, but were unable to reach a resolution. Continental now moves for summary judgment on Henry's claims.

### III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

If the movant meets its burden, the burden shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must

'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'"  *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed.2d 127 (1994)).  The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."  *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted).  Rather, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'"  *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted).  When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]."  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)).  Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)).  Nevertheless, the reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses."  *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 – 52, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986)).

Henry, the plaintiff in this case, has not filed a response to Continental's motion for summary judgment. In accordance with this Court's local rules, oppositions to motions are due within twenty-one days, unless such time is extended. S.D. TEX. L.R. 7.3. Any failure to respond is "taken as a representation of no opposition." S.D. TEX. L.R. 7.4. Notwithstanding Henry's failure to file a response, summary judgment may not be awarded by default. *See Hibernia Nat'l Bank v. Admin. Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). "A motion for summary judgment cannot be granted simply because there is no opposition, even if [the] failure to oppose violated a local rule." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (citing *Hibernia Nat'l Bank*, 776 F.2d at 1279). To this end, Continental, as "[t]he movant[,] has the burden of establishing the absence of a genuine issue of material fact and, unless [it] has done so, the [C]ourt may not grant the motion, regardless of whether any response was filed." *See Hetzel*, 50 F.3d at 362 n.3. Nevertheless, in determining whether summary judgment is appropriate, the Court may accept as undisputed the facts set forth in the movant's motion. *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988) (internal citations omitted).

## IV. ANALYSIS & DISCUSSION

### A. Henry's Claim of Racial Discrimination Under Title VII

At the outset, Continental argues that it is entitled to judgment as a matter of law on Henry's claims because he has no competent summary judgment evidence, beyond his own speculation, that it failed and/or refused to hire him based on his race and disability in violation

of Title VII and the ADA, respectively. It contends that Henry's entire lawsuit is premised solely on the fact that he was not selected for the positions in question, without regard to his own qualifications or those of the applicants selected. Thus, Continental contends that it is entitled on summary judgment on Henry's claims under Title VII and the ADA.

Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In employment discrimination cases, such as the one *sub judice*, discrimination under Title VII may be proven "through direct or circumstantial evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). The Fifth Circuit has held that in cases where no direct evidence[3] of discriminatory intent has been produced, proof by means of circumstantial evidence must be evaluated using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973), and modified by the Fifth Circuit. *See Turner*, 476 F.3d at 345; *see also Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

Under the modified *McDonnell Douglas* framework, the Fifth Circuit has stated the test as follows:

> [T]he plaintiff must first demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of

---

[3] "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *See West v. Nabors Drilling USA, Inc*., 330 F.3d 379, 384 n.3. (5th Cir. 2003) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995)).

> production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) [that] the [defendant] employer's reason is a pretext or (2) that the [defendant] employer's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic.

*Burrell v. Dr. Pepper/Seven Up Bottling Grp.*, 482 F.3d 408, 411 – 12 (5th Cir. 2007) (quoting *Rachid*, 376 F.3d 305, 312 (5th Cir. 2004) (citations, internal quotation marks and alterations omitted). "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton*, 333 F.3d at 578 (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 2106, 147 L. Ed.2d 105 (2000)). "Although intermediate evidentiary burdens shift back and forth under [the *McDonnell Douglas*] framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143, 120 S. Ct. at 2106 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed.2d 207 (1981)). Thus, "a plaintiff can avoid summary judgment if the evidence, taken as a whole: (1) creates a fact issue as to whether each of the employer's stated reasons was not what actually motivated the employer and (2) creates a reasonable inference that race was a determinative factor in the actions of which plaintiff complains." *Grimes v. Tex. Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 141 (5th Cir. 1996) (citing *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 450 (5th Cir. 1996); *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996)).

### 1. Henry's *Prima Facie* Case

Under the *McDonnell Douglas* framework, the plaintiff must first demonstrate a *prima facie* case of discrimination, which, in turn, creates a rebuttable presumption of unlawful

discrimination by the employer. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (citing *Burdine*, 450 U.S. at 255, 101 S. Ct. 1089). If the plaintiff establishes a *prima facie* case, the defendant "employer must rebut [the] presumption of discrimination by articulating a legitimate, nondiscriminatory reason for [its] adverse employment action." *Turner*, 476 F.3d at 345 (citing *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001)). To establish a *prima facie* case of racial discrimination in a refusal-to-hire case under Title VII, Henry must demonstrate that: (1) he is a member of a protected class or group; (2) "he applied and was qualified for a job for which the employer was seeking applicants;" (3) he was not selected for the position, in spite of his qualifications; and (4) "after his rejection, the position remained open and the employer continued to seek applicants from persons of [his] qualifications." *Johnson v. La.*, 351 F.3d 616, 622 (5th Cir. 2003) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817).

Here, Continental denies that Henry has established a *prima facie* case with respect to fifteen of the twenty-five jobs for which he applied. Specifically, it contends that Henry's answers to the initial on-line, job-specific screening questions automatically disqualified him from thirteen of the twenty-five positions for which he applied and as a result, he received no further consideration for these positions. The thirteen positions are identified are as follows: (1) Staff Accountant, (2) Material Specialist, (3) Manager – Financial Analysis, (4) Auditor Field Services, (5) Controller I – Chelsea Food Services, (6) Administrative Assistant, (7) Cargo Administrative Specialist, (8) Auditor Field Services, (9) Sr. Financial Analyst, (10) Accounting Clerk V, (11) Senior Financial Analyst, (12) Financial Analyst, and (13) Staff Manager Coordinator. In support of its contentions in this regard, Continental has tendered the Declaration of John Whalin, Senior Analyst in Continental's Employment Compliance

Department. (*See* Docket Entry No. 27, Ex. E). In his declaration, Whalin declares that he is intimately familiar with Continental's job postings as well as its on-line application processes and procedures. As such, he describes Continental's on-line application process as follows:

> Open and available jobs are posted on Continental's proprietary website for a specified period of time. The postings list the job title, description, and the qualifications for each position. . . . If an individual is interested in a position, the first step in the on-line application process is to submit a resume and answer a series of job-specific screening questions related to the position. Certain answers to the screening questions will automatically disqualify the applicant. After submission of these responses, a form letter is automatically generated advising the individual that his or her application has been received. The letter [further] advises the applicant that 'Continental hires the most qualified individuals available for each vacancy. If from the information you have provided it appears you may be among the most qualified candidates, then you will be contacted by a recruiter to discuss the next steps of the hiring process.' . . . Of those applicants that are not automatically disqualified by the screening questions, additional interviews either in-person or by phone or both are usually scheduled for a varying number of the most qualified applicants based on their on-line submission. . . . .

(*Id.*)

Whalin declares that Henry's "answers to the initial set of on-line screening questions automatically disqualified him from thirteen of the twenty-five positions for which he applied and he was not considered further in the hiring process for these positions." (*Id.*) Further, a copy of the applicable job postings, screening questions, disqualifying questions and Henry's respective responses to such questions is attached to Whalin's declaration and filed as a part of the summary judgment record before this Court. (*Id.*, Ex. E-1). Henry has proffered no evidence rebutting that produced by Continental or otherwise demonstrating that the screening process used by Continental, with regard to the referenced job postings, was discriminatory, not related to the positions posted and/or was inconsistent with Continental's business necessity. Thus, the Court determines that Henry has failed to establish a *prima facie* case with respect to the thirteen positions referenced above because he has failed to demonstrate that he satisfied the minimum

qualifications for the respective positions or that the disqualifying questions were discriminatory and/or inapplicable. Accordingly, Continental is entitled to judgment as a matter of law on Henry's claim relative to these positions.

Similarly, Continental is entitled to summary judgment on Henry's claim with regards to the Dispatcher and Administrative Specialist positions as Continental has proffered uncontroverted summary judgment evidence that the vacancy for these positions was subsequently suspended and no applicant was selected to fill them. (*Id.*, Ex. E ¶ 5). The Fifth Circuit has explained that the cancellation of a vacancy under these circumstances does not constitute an adverse employment action against the employee. *Bowers v. Principi*, 172 Fed. Appx. 623, 626 (5th Cir. 2006); *see also Adams v. Groesbeck Indep. Sch. Dist.*, 475 F.3d 688, 692 (5th Cir. 2007) ("An employer does not discriminate or retaliate illegally if it has no job opening.") (other citations and quotations omitted); *Haynes v. Pennzoil Co.*, 207 F.3d 296, 300 – 01 (5th Cir. 2000) (reasoning that the plaintiff failed to establish a *prima facie* case of discrimination under Title VII because he neglected to show "that he applied and was qualified for" an *available* position with the defendant employer) (emphasis added).

Assuming for purposes of this motion, without deciding, that Henry has established a *prima facie* case with respect to the remaining ten positions for which he applied, namely the positions of Crew Scheduler, Accounting Clerk, Payroll Analyst, Cargo Reservation Specialist, CRC Analyst, Hub Administrative Specialist - IAH, Assistant Manager-Chelsea Food Services, Senior Corporate Auditor, Hub Administrative Specialist - IAH, and Buyer - Chelsea Food Services, the burden shifts to Continental to articulate a legitimate, nondiscriminatory reason for its decision not to hire Henry for these positions.

### 2. Continental's Legitimate, Non-Discriminatory Reasons

Continental's burden, at this stage, is one of production, not persuasion . . . [and] can involve no credibility assessment.'" *Rios v. Rossotti*, 252 F.3d 375, 379 (5th Cir. 2001) (quoting *Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106). As such, "[Continental] need only articulate a lawful reason, regardless of what its persuasiveness may or may not be." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993). Generally, Continental contends that while Henry's resume was considered for these positions, he was not selected for them due to its selection of more qualified candidates, based on objective job requirements as well as each candidate's skills and experiences. More specifically, Continental alleges the following with respect to each of the ten remaining positions:

1. **Crew Scheduler**. [It] filled three open and available crew scheduler positions in approximately September [of] 2008. ([Docket Entry No. 27, Ex. E,] Whalin Decl. ¶ 6). John Whalin was the hiring manager for the position. (*Id.*). Particularly important to Mr. Whalin was whether the candidate had previous crew scheduling experience with [Continental] or another airline. (*Id.* ¶ 7). The three applicants selected for the Crew Scheduler positions all had several years of specific pilot and crew scheduling experience with [Continental] or other airlines, and, according to Whalin, were the most qualified applicants for the position based on the objective job requirements. (*Id.*). Henry, in contrast, had no prior scheduling experience and lacked several of the other qualifications identified on the job posting, *e.g.*, computer experience. (*Id.* at Ex. E-2). Of the three selected applicants, two were Hispanic and one was White. (*Id.* ¶ 7).

2. **HUB Administrative Specialist**. Joyce Davis . . . was responsible for filling the vacant Hub Administrative Specialist position in December [of] 2008 and made the hiring decision. ([Docket Entry No. 27,] Ex. F, Decl. of Joyce Davis, ¶¶ 3, 5). Ms. Davis selected Julicia Minor, African-American, to interview and hired her for the position because she was the most qualified candidate for the job. (*Id.* ¶ 3). In particular, Ms. Minor was proficient in a number of frequently used Microsoft Office products (*i.e.*, Word, Outlook, Excel, Access, and PowerPoint), as identified on the job posting, and she had specific experience in the job duties required [for] this position. (*Id.* ¶ 4). Henry's resume list[ed] no specific computer skills or similar work experience; therefore, he was not selected for an interview or ultimately the position. Ms. Davis did not know Henry's race or that he suffered from a back injury when she selected Ms. Minor for the job. (*Id.* ¶ 5).

3. **Cargo Reservation Specialist**. Keith Freeman, Senior Manager for Cargo Customer Service & Support, was responsible for filling the six vacant Cargo Reservation Specialist positions in September 2008. ([Docket Entry No. 27,] Ex. G, Decl. of Keith Freeman . . . , ¶¶ 2, 3). Mr. Freeman selected Carlos G. Campos, John Stelly, Kristina Dicuru, Michelle P. Jimenez, Monika Sikka, and Vernice A. Mitchell for these openings because they were the most qualified candidates for the position based on their resume, objective skills and past experience, including but not limited to language skills, computer skills and the specific type of customer service experience required [for] this position. (*Id.* ¶ 3). According to Mr. Freeman, these candidates were far better qualified than Henry whose resume did not identify any comparable skills or job experience. (*Id.* ¶ 4). Of the six hires, two were African-American, one was Hispanic, one was Caucasian, one was Asian, and one did not identify race. (*Id.* ¶ 5). Mr. Freeman did not know Henry's race or the details of his back injury when he reviewed the resumes and filled these positions. (*Id.*).

4. **Accounting Clerk IV**. Vernda Berry, Supervisor, Station Sales, along with her manager, were responsible for filling the position of Accounting Clerk IV in September [of] 2008. ([Docket Entry No. 27], Ex. H, Decl. of Vernda Berry . . ., ¶ 3). She selected Rose Raia for this job because she was the most qualified candidate. (*Id.*). Among other things, Ms. Raia had several years of experience in [Continental's] accounting department and had previously held the position of accounting clerk, which was an important factor in selecting her for the position. (*Id.*). She also had a range of computer skills, including . . . specific skills in Microsoft Excel, which is frequently used in the job. (*Id.*). According to Ms. Berry, Ms. Raia was far more qualified for the position based on her objective skills and experience than Henry. (*Id.* ¶ 4). Ms. Berry . . . did not know Henry's race or the nature of his disability when she selected Ms. Raia. (*Id.* ¶ 5).

5. **Payroll Analyst**. Jenny Lichte, Payroll Systems Supervisor, made the hiring decision for the Payroll Analyst position filled in November [of] 2008. ([Docket Entry No. 27], Ex. I, Decl. of Jenny Lichte . . ., ¶ 2, 3). Ms. Lichte selected Pishoy "Bob" Bakhoum for this job because he was the most qualified candidate for the position based on the objective job requirements and Mr. Bakhoum's skills and demonstrated job performance. (*Id.* ¶ 3). Mr. Bakhoum was already working competently as a temporary employee in the payroll department when he applied for the job and in this position had demonstrated project management skills consistent with the analyst position. (*Id.* ¶ 4). This distinguished him from the other candidates who submitted a resume, including Henry. When Ms. Lichte selected Mr. Bakhoum for the position, she did not know Henry's race and did not know that he suffered from a back injury.

6. **CRC Analyst**. Chuck Roop, CRC Operations Manager, was the hiring manager and filled the position of CRC Analyst in September [of] 2008 ([Docket Entry No. 27], Ex. J, Decl. of Chuck Roop . . ., ¶¶ 1, 3). Mr. Roop selected Sandra Boothe-Armstrong, African-American, for the job because she was the most

qualified candidate for the position based on her identified computer skills, extensive experience with two internal reservations programs known as ACI and SHARES, and [her] previous experience with [Continental's] reservations and ATO Help Desk. (*Id.* ¶¶ 3, 4). Henry did not. (*Id.*). According to Mr. Roop, Ms. Boothe-Armstrong was far more qualified than Henry. (*Id.* ¶ 4). When he selected Ms. Boothe-Armstrong for the position, Mr. Roop did not know Henry's race and did not know that he suffered from a back injury. (*Id.*).

7. **HUB Administrative Specialist**. Jamie Hamous, previously a Recruiting Coordinator, reviewed the on-line resumes and referred candidates for the Hub Administrative Specialist position to the hiring manager. ([Docket Entry No. 27,] Ex. K, Decl. of Jamie Hamous . . ., ¶¶ 1, 2, 3). Henry's responses to the screening questions did not disqualify him from the position, but his response to Question 4 (which admitted no skills in Microsoft Access) indicated a lack of technical proficiency in one of the job duties performed by the HUB Administrative Specialist, and a preferred qualification. (*Id.* ¶ 3). Based on the varying requirements for the position, Mr. Hamous ran a keyword search of all resumes for the words "Payroll," "FMLA," and "Administrative" in order to identify applicants with the requisite qualifications and experience to refer to the hiring manager. (*Id.* ¶ 5). Henry's resume did not appear in the search results and he (in addition to many others) was not referred to the hiring manager for further consideration. Mr. Hamous did not know Henry's race and did not know that he suffered from a back injury when he ran the search. (*Id.* ¶ 6). The successful candidate hired was Hispanic.

8. **Senior Corporate Auditor**. Cheryl Austin, University Relations Manager, Human Resources – Global Recruiting, was responsible for reviewing the on-line applications and referring candidates for a Senior Corporate Auditor position filled in November 2008. ([Docket Entry No. 27,] Ex. L, Decl. of Cheryl Austin . . ., ¶¶ 1, 2). Preferred experience included internal corporate, as opposed to tax, auditing experience and previous work experience as an accountant or CPA in a Big 4 accounting firm. (*Id.* ¶ 3). Ms. Austin did not select Henry for referral to the hiring manager because his resume did not reflect the relevant skills and work experience that [Continental] was seeking in filling this senior position, as opposed to other more qualified applicants. (*Id.*). Henry's resume indicated that he had not worked as a Certified Public Accountant since 1993 and had no internal corporate as opposed to tax auditing experience. (*Id.* ¶ 4). The hiring manager selected Ron Bair for the position. (*Id.* ¶ 5). Mr. Bair has a B.S. in Business Administration from Trinity University, an M.S. in Accountancy from the University of Houston Bauer College of Business, and had recently passed all parts of the Certified Public Accountant examination when he applied for the job. (*Id.* ¶ 5). Mr. Bair was also working for Pricewaterhouse Coopers (a Big 4 accounting firm) in a corporate audit capacity when he applied. (*Id.*). Mr. Bair's resume was submitted by an executive search firm directly to the hiring manager. (*Id.* ¶ 4). No on-line resumes, including Henry's, were reviewed by the hiring manager. (*Id.*).

9. **Buyer-Chelsea**. Holly Armstrong, formerly a Controller for [Continental], supervised the Buyer position within the Chelsea Food Services Division for which Henry applied in May [of] 2008 and was also the hiring manager. ([Docket Entry No. 27,] Ex. M, Decl. of Holly Armstrong . . ., ¶ 2, 3). Ms. Armstrong selected Ann K. Conn for the job because she was the most qualified candidate for the job. (*Id.* ¶ 3). In addition to listing skills consistent with the job requirements on her resume, she also had specific experience as a buyer in the food industry. (*Id.*). This was a very important factor in selecting Ms. Conn for the job and made her far more qualified for the position than Henry. (*Id.*). Ms. Armstrong did not know Henry's race or the nature of any alleged disability when she selected Ms. Conn for the job. (*Id.* ¶ 5).

10. **Assistant Manager – Chelsea**. Ramiro Moreno, previously Senior Administrative Coordinator for [Continental's] Chelsea Food Services Division, conducted a telephone interview with Henry for the Assistant Manager – Chelsea position filled in October 2008. ([Docket Entry No. 27,] Ex. N, Decl. of Ramiro Moreno . . ., ¶ 2). He was very familiar with the job duties and qualifications for the position. (*Id.*). In addition to the objective job requirements, the interviews focused on the candidates' leadership abilities and past experience in the food industry. (*Id.* ¶ 3). Mr. Moreno also interviewed the successful candidate, Dorothy Sample, African-American, and considered her well-qualified for the position because she had the skills and demonstrated experience as a current . . . employee in [Continental's] Chelsea Food Services Division. (*Id.*). She also demonstrated strong leadership abilities on both her resume and in her responses to interview questions. (*Id.*). The hiring manager selected Ms. Sample for the position. (*Id.* ¶ 4). According to Mr. Moreno and based on his knowledge of the job, she was far more qualified for the position in light of her objective skills and demonstrated experience in the Chelsea Division than Henry, (*id.*), who had no comparable skills or experience.

(*Id.*) These explanations, unless refuted, constitute legitimate, non-discriminatory reasons for Continental's hiring of other applicants for the ten remaining positions instead of Henry. *See Manning v. Chevron Chem. Co. LLC*, 332 F.3d 874, 881 - 82 (5th Cir. 2003) (the employer's statement that it chose the "best qualified" candidate was a legitimate, non-discriminatory explanation for its failure to promote and/or hire the plaintiff).

### 3. Evidence of Pretext

A plaintiff may rebut a defendant employer's legitimate, nondiscriminatory reason, "survive summary judgment, and take his case to the jury by providing evidence that he was

'clearly better qualified' than the employee selected for the position at issue." *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001) (internal citations omitted). "In order to rebut a defendant's showing of legitimate, nondiscriminatory reasons for its actions, [however] '[i]t is not enough . . . to *dis* believe the employer.'" *Warren v. City of Tupelo Miss.*, 332 Fed. Appx. 176, 181 (5th Cir. June 3, 2009) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519, 113 S. Ct. 2742, 125 L. Ed.2d 407 (1993) (emphasis in original)). Rather, "the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* (emphasis in original). "However, the bar is set high for this kind of evidence because differences in qualifications are generally not probative evidence of discrimination unless those disparities are 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Celestine*, 266 F.3d at 357 (quoting *Deines v. Tex. Dep't of Prot. & Regulatory Servs.*, 164 F.3d 277, 281 (5th Cir. 1999)).

In the case *sub judice*, Henry identifies no evidence suggesting that Continental's articulated reasons for not hiring him for any of the positions at issue were pretextual. Henry also makes no effort to compare his qualifications to those of the applicants selected. In fact, in this deposition, when asked about what actions he thinks Continental has taken against him because of his race or disability, Henry testified as follows:

> Again, once more—and I'm not trying to argue the point, but I was denied an— employment, and from my perspective and my knowledge, I think I was qualified. I think I had the educational qualification, and I think I had the job experience to do whatever job that I applied for. If there is a reason why I was denied the position, I may think it's because of my race or because of my disability. I leave it up to a third party to make that decision.

(Docket Entry No. 27, Ex. A at 76:5 – 20.). In addition, when asked whether he believed he was not given the buyer job based on his race, Henry testified:

> You know, I have applied for quite a few jobs. You said 24. I didn't expect to get all 24 jobs. I applied for jobs basically requiring from a high school education to a college education. I looked at the requirements for the job. I matched it up on—based on my job experience and work experience. I know I'm repeating myself, but that's my basis . . . .

(*Id.* at 123:9 – 20.). Moreover, when asked why he believed it to be true that Continental intentionally refused to rehire him due to his race or disability, he testified that "[t]he reason why [he] believe[s] that's true and the reason why the EEOC thinks . . . there may be something there was because of the fact that [he's] not---[he] was never employed." (*Id.*, Ex. A at 130:10 –18.) Indeed, Henry's own subjective belief that he was "clearly better qualified" than the candidates selected, without more, is insufficient to support a claim of discrimination. *See Little v. Republic Refin. Co.*, 924 F.2d 93, 96 (5th Cir. 1991) (citing *Elliott v. Grp. Med. & Surgical Servs.*, 714 F.2d 556, 567 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2658, 81 L. Ed.2d 364 (1984) (reasoning that a plaintiff's "subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief.")).

Furthermore, by his own admission, Henry was not a licensed CPA and had not regularly performed work in the accounting area for more than fifteen years. (*Id.*, Ex. A at 140.) In fact, when asked what it would take to reactivate his license, he stated, "Quite a bit of money and a lot of catching up on the various changes that have been made to the FASB and the accounting principles." (*Id.*) He also alluded to the fact that he possessed limited computer skills and had not used such skills on a constant basis in the over fifteen years. (*Id.*, Ex. A at 121 - 22.) He further testified that his work at Continental was limited to that of a customer service agent and did not include any experience in accounting, payroll, auditing or the Chelsea Food Services Division. (*Id.*, Ex. A at 32.) Henry has proffered no evidence to dispute his earlier testimony nor has he tendered any evidence from which this Court can infer that he was "clearly better

qualified" than any of the applicants selected for the various positions; indeed, his own resume and testimony indicates that he lacked critical, comparable skills and experience. Thus, Henry has failed to raise a genuine issue of material fact as to whether Continental's articulated reasons for not hiring him were pretextual or create a reasonable inference that race was a determinative factor in Continental's failure to hire him.

### B. Henry's Claim Under the ADA

Additionally, Henry has failed to present a *prima facie* case that that he was not rehired by Continental due to his physical impairment and/or disability in violation of the ADA. The ADA provides, in pertinent part, that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). It defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The term "disability" within the meaning of the ADA is defined to encompass "(1) a mental or physical impairment that substantially limits one or more major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such an impairment." *Collins v. Saia Motor Freight Lines, Inc.*, 144 Fed. Appx. 368, 370 - 71 (5th Cir. 2005) (citing *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1119 (5th Cir. 1998) (citing 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g)); *see also Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (citing *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir. 1999)). Further, "[m]ajor life activities [are defined to] include 'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading,

concentrating, thinking, communicating, and working.'" *Kemp*, 610 F.3d at 235 (quoting 42 U.S.C. § 12102(2)(A)). Therefore, in order "[t]o establish a *prima facie* case of discrimination under the ADA, a plaintiff must establish that he is a qualified individual with a disability and that a negative employment action occurred because of his disability." *Collins*, 144 Fed. Appx. at 370 – 71 (citing *Sherrod*, 132 F.3d at 1119).

Here, Henry has presented no evidence or otherwise alleged that he is a "qualified individual" with "a physical or mental impairment that substantially limits his ability to perform a major life activity." Nor has he demonstrated that Continental failed or refused to hire him for any of the aforementioned positions due to his disability. As specifically explained in Section A above, this Court has determined the converse. Accordingly, Henry has failed to establish a *prima facie* case under the ADA and Continental is entitled summary judgment on his ADA claim.

## V.   CONCLUSION

Based on the foregoing analysis and discussion, Continental's motion for summary judgment is hereby GRANTED.

It is so **ORDERED**.

SIGNED at Houston, Texas this 9th day of September, 2010.

_____
Kenneth M. Hoyt
United States District Judge